# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**VICTOR COLBERT,**

            **Plaintiff,**

**v.**                                                                 **Case No: 6:19-cv-2176-LRH**

**COMMISSIONER OF SOCIAL SECURITY,**

            **Defendant.**

_____

## MEMORANDUM OF DECISION

Victor Colbert ("Claimant") appeals the Commissioner of Social Security's ("Commissioner") final decision denying his applications for disability benefits. (Doc. 1). The Claimant raises several arguments challenging the Commissioner's final decision and, based on those arguments, requests that the matter be reversed and remanded for further proceedings. (Doc. 23 at 13-18, 29-31, 36-38, 41). The Commissioner argues that the Administrative Law Judge ("ALJ") committed no legal error and that his decision is supported by substantial evidence and should be affirmed. (*Id*. at 18-29, 31-36, 38-41). Upon review of the record, the Court finds the Commissioner's final decision is due to be **AFFIRMED**.

## I.  Procedural History

This case stems from the Claimant's April 27, 2016 applications for disability insurance benefits and supplemental security income, in which he alleged a disability onset date of March 31, 2016. (R. 246-55). The applications were denied on initial review and on reconsideration. The matter then proceeded before an ALJ, who held a hearing on September 25, 2018. (R. 34-64). The

Claimant, his mother, and his representative attended the hearing. (*Id.*).[1] On October 19, 2018, the ALJ entered a decision denying the Claimant's applications for disability benefits. (R. 10-20). The Claimant requested review of the ALJ's decision, but the Appeals Council denied his request. (R. 1-3). This appeal followed.

## II.    The ALJ's Decision

The ALJ performed the five-step evaluation process set forth in 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4) in reaching his decision.[2] First, the ALJ found the Claimant met the insured status requirements of the Social Security Act through December 31, 2017, and that he has not engaged in substantial gainful activity since the alleged onset date. (R. 12-13). The ALJ next found that the Claimant suffers from the following severe impairments: status post multiple gunshot wounds and corrective surgeries and procedures;[3] borderline intellectual functioning; major depressive disorder; and posttraumatic stress disorder. (R. 13). The ALJ concluded that none of the Claimant's impairments, individually or in combination, met or medically equaled any listed

---

[1] The Claimant's mother attended the hearing to offer testimony in support of her son's applications. (R. 52-58).

[2] An individual claiming Social Security disability benefits must prove that he or she is disabled. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). The five steps in a disability determination include: (1) whether the claimant is performing substantial, gainful activity; (2) whether the claimant's impairments are severe; (3) whether the severe impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) whether the claimant can return to his or her past relevant work; and (5) based on the claimant's age, education, and work experience, whether he or she could perform other work that exists in the national economy. *See generally Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004) (citing 20 C.F.R. § 404.1520); *see also* 20 C.F.R. § 416.920.

[3] The allege onset date coincides with the day after the Claimant was shot. The ALJ mentioned the injuries related to the shooting, including "left acetabulum fracture, left ilial wing fracture, left femoral head fracture, large retroperitoneal and left pelvic hematoma, and a rectal injury with active extravasation." (R. 13). Rather than identifying these injuries, which were surgically repaired in the days and weeks following the shooting, as individual impairments, the ALJ accounted for them by finding that the Claimant suffered a severe impairment of "status post multiple gunshot wounds and corrective surgeries and procedures." (*Id.*).

impairment.   (R. 13-16).

The ALJ next found that the Claimant has the residual functional capacity ("RFC") to perform sedentary work as defined by 20 C.F.R. §§ 404.1567(a) and 416.967(a),[4] with the following additional limitations:

> [H]e can occasionally climb ramps or stairs and can never climb ladders, ropes or scaffolds.   He can occasionally stoop, kneel, crouch or crawl.   The claimant must avoid concentrated exposure to extreme cold and must avoid concentrated exposure to excessive vibration.   He must avoid concentrated exposure to unprotected heights and must avoid exposure to hazardous machinery.   The claimant is limited to simple, routine tasks.   He must have the option to alternate between sitting or standing, every thirty minutes, provided that he remain on task.

(R. 16).   The Claimant had no past relevant work experience so the ALJ proceeded to step five. (R. 24).   There, the ALJ found the Claimant can perform other work in the national economy, including work as a cashier and office helper.   (R. 19-20).   Accordingly, the ALJ concluded that the Claimant was not disabled between his alleged onset date (March 31, 2016) through the date of the decision (October 19, 2018).   (R. 20).

## III.    Standard of Review

The scope of the Court's review is limited to determining whether the Commissioner applied the correct legal standards and whether the Commissioner's findings of fact are supported by substantial evidence.   *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).   The Commissioner's findings of fact are conclusive if they are supported by substantial evidence, 42 U.S.C. § 405(g), which is defined as "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."   *Lewis v. Callahan*, 125 F.3d

---

[4] Sedentary work is defined as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.   Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.   Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."   20 C.F.R. §§ 404.1567(a), 416.967(a).

1436, 1440 (11th Cir. 1997).   The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision, when determining whether the decision is supported by substantial evidence.   *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).   The Court may not reweigh evidence or substitute its judgment for that of the Commissioner, and, even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm it if the decision is supported by substantial evidence.   *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

## IV.   Analysis

The Claimant's briefing is not a model of clarity, and at times reads like a stream of consciousness narrative.   On its face, it appears the Claimant, who is represented by counsel, raises three assignments of error.   (Doc. 23 at 13-18, 29-31, 36-38).   Each assignment of error, however, contains multiple, distinct arguments conflating and combining a variety of legal precepts.   (*See id.*).   Despite the lack of clarity, the Court has undertaken a careful review of the Claimant's portion of the Joint Memorandum, and has identified four arguments that are sufficiently developed to warrant a merit review: 1) the ALJ failed to adequately explain why the Claimant did not meet or equal Listing 1.02; 2) the ALJ failed to discuss all the medical evidence and consider the record as a whole; 3) the ALJ failed to apply the correct legal standards to the medical opinions of record; and 4) the ALJ erred when considering the Claimant's and his mother's allegations concerning the limiting effects of his impairments and associated symptoms.   (*Id.*).   The Court will consider each of these arguments in turn.[5]

---

[5] The Court only addresses arguments that are sufficiently developed, while ignoring those that are raised in a conclusory or perfunctory manner.   *See, e.g., Jacobus v. Comm'r of Soc. Sec.*, 664 F. App'x 774, at 777 n.2 (11th Cir. 2016) (stating that the claimant's perfunctory argument was arguably abandoned); *Gombash v. Comm'r of Soc. Sec.*, 566 F. App'x 857, 858 n.1 (11th Cir. 2014) (stating that the issue was not properly presented on appeal where claimant provided no

### A. Listing 1.02

The Claimant argues that the ALJ failed to sufficiently explain why he neither meets nor equals Listing 1.02.  (Doc. 23 at 16).  Upon consideration of this argument and the Commissioner's response, the Court finds no basis for reversal.

At step three, the ALJ must consider whether a claimant's impairments, individually or in combination, meet or equal any of the impairments contained in the Listing of Impairments (the "Listings"), which identifies impairments that are considered severe enough to prevent a person from engaging in any gainful activity.  20 C.F.R. §§ 404.1525(a), 416.925(a).  However, "it is not required that the [ALJ] mechanically recite the evidence leading to [the ALJ's] determination." *Hutchison v. Bowen*, 787 F.2d 1461, 1463 (11th Cir. 1986).  Indeed, "[t]here may be an implied finding that a claimant does not meet a listing." *Id*.  Thus, where an ALJ fails to explicitly state that he or she considered and rejected a listing (let alone the reasons for the rejection of that listing), but it is determined from a review of the record that the ALJ implicitly found that the claimant did not meet the listing, courts will review the record to determine whether substantial evidence supports the ALJ's decision to reject that listing.  *See, e.g.*, *Flemming v. Comm'r of the Soc. Sec. Admin.*, 635 F. App'x 673, 676-78 (11th Cir. 2015) ("In sum, the record reflects that the ALJ sufficiently considered [the claimant's disorder] in combination with his other impairments, and substantial evidence supports the ALJ's implicit determination that [the claimant] did not meet or equal [a specified listing.]").[6]  A review of the record here establishes that substantial evidence supports the ALJ's implicit determination that the Claimant does not meet or equal Listing 1.02.

---

supporting argument); *NLRB v. McClain of Ga., Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998) ("Issues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived.").

[6] In the Eleventh Circuit, unpublished decisions are not binding, but are persuasive

"The evidentiary standards for presumptive disability under the Listings are stricter than for cases that proceed to other steps in the sequential evaluation process[.]" *Carter v. Astrue*, No. 3:02-cv-1154-J-TEM, 2008 WL 4456635, at *5 (M.D. Fla. Sept. 30, 2008) (citations omitted). The claimant has the burden of proving that an impairment meets or equals a listed impairment. *Barron v. Sullivan*, 924 F.2d 227, 229 (11th Cir. 1991). To "meet" a listed impairment, "a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the [listed impairment] and the duration requirement." *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002) (citing 20 C.F.R. § 404.1525(a)-(d)); *see also Mijenes v. Comm'r of Soc. Sec.*, 687 Fed. App'x 842, 845 (11th Cir. 2017) ("An impairment that manifests only some of [the] criteria, no matter how severely, does not qualify.") (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)) (alterations in original). To "equal" a listed impairment, the medical findings must be "at least equal in severity and duration to the listed findings." *Wilson*, 284 F.3d at 1224 (citing 20 C.F.R. § 404.1526(a)). "If a claimant has more than one impairment, and none meets or equals a listed impairment, the Commissioner reviews the impairments' symptoms, signs, and laboratory findings to determine whether the combination is medically equal to any listed impairment." *Id*. If a claimant satisfies his or her burden of proving that an impairment meets or equals a listed impairment, then he or she is disabled. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). If not, the ALJ moves on to step four and, if necessary, step five. *See id*.

Listing 1.02 provides:

Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically

---

authority. *See* 11th Cir. R. 36-2.

acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:

A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b;[7] or

B. Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c.[8]

20 C.F.R. Part 404, Subpart P, Appendix 1, Part A, § 1.02 (footnotes added).

The ALJ expressly considered whether the Claimant met or equaled Listing 1.02 and, in conjunction with his consideration of the other relevant listings, he explained that "[n]o treating or

---

[7] The inability to ambulate effectively is defined as:

Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. (Listing 1.05C is an exception to this general definition because the individual has the use of only one upper extremity due to amputation of a hand.)

20 C.F.R. Part 404, Subpart P, Appendix 1, Part A, § 1.00B2b(1).

[8] The inability to perform fine and gross movements effectively is defined as:

Inability to perform fine and gross movements effectively means an extreme loss of function of both upper extremities; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. To use their upper extremities effectively, individuals must be capable of sustaining such functions as reaching, pushing, pulling, grasping, and fingering to be able to carry out activities of daily living. Therefore, examples of inability to perform fine and gross movements effectively include, but are not limited to, the inability to prepare a simple meal and feed oneself, the inability to take care of personal hygiene, the inability to sort and handle papers or files, and the inability to place files in a file cabinet at or above waist level.

20 C.F.R. Part 404, Subpart P, Appendix 1, Part A, § 1.00B2c.

examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment, nor does the evidence show medical findings that are the same or equivalent to those of any listed impairment of the Listings of Impairments." (R. 13). While this reasoning is broad, the ALJ was not required to mechanically recite the evidence upon which he relied in reaching the otherwise express determination that the Claimant neither meets nor equals Listing 1.02. *Hutchison*, 787 F.2d at 1463. The ALJ's discussion of Listing 1.02 was therefore legally sufficient.

Further, the Claimant has neither argued nor otherwise shown that the evidence in the record demonstrates that he either meets or equals Listing 1.02. The Claimant has therefore waived that argument. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004) (refusing to consider an argument that the claimant failed to raise before the district court). Even if there was no waiver, the ALJ's determination that the Claimant does not meet or equal Listing 1.02 is supported by substantial evidence because the evidence of record shows that the Claimant has the ability to ambulate effectively (*see, e.g.*, R. 42 (testimony that he can walk with a limp))[9] and perform fine and gross movements with his upper extremities (*see, e.g.*, R. 42-44 (testimony about performing jobs (car washer and cashier) requiring fine and gross movements with upper extremities)). For these reasons, the Court finds the ALJ's determination that the Claimant does not meet or equal Listing 1.02 is both legally sufficient and supported by substantial evidence.

---

[9] The Court recognizes that there is some evidence that the Claimant used a wheelchair and walker in the months following the shooting and subsequent surgeries. (R. 338, 360, 371, 822, 860, 943-44, 971-72). At the hearing, however, there was no testimony that the Claimant required an assistive device to ambulate. (*See* R. 36-64). Instead, the Claimant testified that he walked with a limp and could do so for about two hundred (200) feet before needing to rest.

### B.  The ALJ's Consideration of the Medical Evidence of Record

The Claimant next argues that the ALJ failed to "properly review and evaluate" all the medical evidence of record and the impairments discussed in those records.  (Doc. 23 at 13-15, 31).  Specifically, the Claimant contends that the ALJ did not fully address: 1) all of the records stemming from his hospitalization following the shooting; 2) the 2004 finding by Dr. David J. Fleischmann that he had a full-scale IQ score of 69; and 3) the 2010 finding by Dr. Pamela D. Green that he had moderate limitations in the ability to maintain concentration, persistence, or pace and carry out a normal workweek.  (*Id*. at 15).[10]  Upon review of the record, and the parties' arguments, the Court finds that the ALJ did not commit reversible error.

The Claimant is correct that the ALJ did not explicitly address every piece of medical evidence in his decision.  But he was not required to do so.  *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) ("there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is not enough to enable [the district court or this Court] to conclude that [the ALJ] considered [the claimant's] medical condition as a whole.") (internal quotation marks omitted).

The ALJ's decision does not evince a broad rejection.  To the contrary, the ALJ considered the very evidence (or similar evidence) identified by the Claimant.  First, the ALJ's decision reflects that he considered treatment records from the Claimant's hospitalization following the shooting.  (R. 13 (citing Exhibit 9F which contains most of the records from the Claimant's hospitalization), 17 (citing Exhibit 8F which contains evidence regarding orthopedic treatment shortly after the shooting)).  The fact that the ALJ did not discuss these records in greater detail

---

[10]  These are the only records the Claimant clearly identifies as having not been addressed (or sufficiently addressed) by the ALJ.  (Doc. 23 at 15).

does not demonstrate that he failed to consider the hospital records in reaching his RFC determination. *See Wheeler v. Apfel*, 224 F.3d 891, 895 n.3 (8th Cir. 2000) ("That the ALJ did not attempt to describe the entirety of Wheeler's medical history does not support Wheeler's argument that the ALJ disregarded certain aspects of the record."). Second, while the ALJ did not expressly mention the Claimant's full-scale IQ score of 69 from 2004, that does not mean he failed to consider it. *See Dyer*, 395 F.3d at 1211. Further, the ALJ did discuss the Claimant's subsequent full-scale IQ score from 2010, which was 77. (R. 15, 590). The ALJ therefore clearly considered the Claimant's IQ score in determining whether he was disabled. Third and finally, the ALJ expressly considered and weighed Dr. Green's opinion. (R. 18). Considering the foregoing, the Court finds the ALJ properly considered the medical evidence of record in determining whether the Claimant was disabled.

### C. The Opinion Evidence

The Claimant's third argument consists of a broad statement that the "ALJ failed to apply the correct legal standards to the opinions of all of [his] treating physicians[.]" (Doc. 23 at 13, 17). The Claimant, however, does not identify any treating opinions with respect to this argument. (*See id*. at 13-18). Instead, the Claimant only points to two non-treating opinions, one from Dr. Fleischmann and another from Dr. Green. (*Id*. at 17). While the Claimant does not articulate precisely how the ALJ erred in considering these opinions, it appears, based on a review of the Claimant's briefing as a whole, that the Claimant argues that the ALJ erred by disregarding Dr. Fleischmann's opinion and discounting Dr. Green's opinion. (*Id*. at 17).

The ALJ is tasked with assessing a claimant's RFC and ability to perform past relevant work. *Phillips*, 357 F.3d at 1238. The RFC "is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments." *Lewis*, 125 F.3d at 1440. In

determining a claimant's RFC, the ALJ must consider all relevant evidence, including the medical opinions of treating, examining and non-examining medical sources, as well as the opinions of other sources. *See* 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); *see also Rosario v. Comm'r of Soc. Sec.*, 490 F. App'x 192, 194 (11th Cir. 2012).

The ALJ must consider a number of factors in determining how much weight to give each medical opinion, including: 1) whether the physician has examined the claimant; 2) the length, nature, and extent of the physician's relationship with the claimant; 3) the medical evidence and explanation supporting the physician's opinion; 4) how consistent the physician's opinion is with the record as a whole; and 5) the physician's specialization. 20 C.F.R. §§ 404.1527(c), 416.927(c).

A treating physician's opinion must be given controlling weight, unless good cause is shown to the contrary. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) (giving controlling weight to the treating physician's opinion unless it is inconsistent with other substantial evidence); *see also Winschel*, 631 F.3d at 1179. The opinion of an examining physician, on the other hand, is generally not entitled to any special deference. *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) (citing *Gibson v. Heckler*, 779 F.2d 619, 623 (11th Cir. 1986)). In addition, "[t]he opinions of nonexamining, reviewing physicians, . . . when contrary to those of the examining physicians, are entitled to little weight, and standing alone do not constitute substantial evidence." *Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987). The ALJ, however, may rely on a non-examining physician's opinion where it is consistent with the medical and opinion evidence. *See Crawford*, 363 F.3d at 1160 (holding that the ALJ did not err in relying on a consulting physician's opinion where it was consistent with the medical evidence and findings of the examining physician).

Regardless of whether the opinion is from a treating, examining, or non-examining source, the ALJ must state the weight assigned to each medical opinion, and articulate the reasons

supporting the weight assigned.  *Winschel*, 631 F.3d at 1179.  The failure to state the weight with particularity or articulate the reasons in support of the assigned weight prohibits the Court from determining whether the ALJ's ultimate decision is rational and supported by substantial evidence. *Id*.

In 2004, more than a decade before the alleged onset date, Dr. Fleischmann, a psychologist, conducted a one-time psychological evaluation of the Claimant, who was thirteen (13) years old at the time.  (R. 419).  The mental status examination was largely unremarkable, with two exceptions.  (R. 420).  Dr. Fleischmann observed that the Claimant's attention and concentration were wavering and that he had difficulty in comprehending multi-step directions.  (*Id*.).  Dr. Fleischmann also conducted intellectual and achievement assessments, revealing a full-scale IQ score of 69 and average academic skills.  (R. 420-22).  Based on his examination, Dr. Fleischmann diagnosed the Claimant with attention deficit hyperactivity disorder and a provisional diagnosis of mild mental retardation.  (R. 422).  Dr. Fleischmann, however, did not offer any functional limitations.

Several years later, in 2010, Dr. Green, a non-examining psychiatrist, completed a psychiatric review technique and mental RFC assessment.  (R. 592-609).  Ultimately, Dr. Green opined that the Claimant is able to: 1) "understand and remember simple instructions, but may have more difficulties with more detailed instructions;" 2) "complete simple tasks/work procedures and be able to make work decisions but may have difficulty with maintaining attention and concentration for extended periods and at times may have difficulties carrying out detailed instructions;" 3) "cooperate and be socially appropriate;" 4) "react and adapt appropriately to the work environment;" and 5) "independently perform[ ] basic, routine tasks on a sustained basis."  (R. 608).

The Claimant has not shown that the ALJ erred with respect to Dr. Fleischmann's examination report or Dr. Green's opinion. While the ALJ neither mentioned nor weighed Dr. Fleischmann's report, these omissions did not result in error. First, Dr. Fleischmann's report predates the relevant period by nearly sixteen (16) years and, therefore, it is unclear whether the findings in that report have any bearing on the relevant period. *See Potter v. Colvin*, 2013 WL 1347282, at *3 (M.D. Fla. Feb. 28, 2013) (finding no error where the ALJ failed to discuss or weigh treatment notes predating the alleged onset date by nearly three years because the evidence weas "too remote to be relevant to the issue of whether" the claimant was disabled on or after the alleged onset date) (citing *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008) ("Medical opinions that predate the alleged onset of disability are of limited relevance")). Indeed, a later report, which still predates the relevant period, indicates that the Claimant's condition improved with a finding of a full-scale IQ score of 77. (R. 590).

Second, even though the Court questions whether Dr. Fleischmann's report constitutes an opinion that should have been weighed, *see* 20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1) ("Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions"), the failure to weigh the report (assuming it is an opinion) is, at best, harmless error. The ALJ's decision to limit the Claimant to "simple, routine tasks" (R. 16) is generally consistent with Dr. Fleischmann's observations during the mental status examination, which revealed wavering attention and concentration and difficulty with comprehending multi-step directions. *Wright v. Barnhart*, 153 F. App'x 678, 684 (11th Cir. 2005) (failure to weigh a medical opinion is harmless error if the opinion does not directly contradict the ALJ's RFC determination). For

these reasons, the Court finds the ALJ committed no error with respect to Dr. Fleischmann and, even if he did, the error is harmless.

The Claimant's argument concerning Dr. Green fairs no better. The ALJ expressly weighed Dr. Green's opinion, assigning it little weight. (R. 16). The Claimant, however, does not articulate why the ALJ erred by assigning the opinion little weight. Absent any specific argument, the Claimant has effectively waived his challenge to the weight assigned to Dr. Green's opinion. *See Crawford*, 363 F.3d at 1161. Even if the argument had not been waived, and assuming the ALJ may have committed error in assigning Dr. Green's opinion little weight, any such error would be harmless. The ALJ's determination that the Claimant can perform "simple, routine tasks" is consistent with Dr. Green's opinion, which essentially limited the Claimant to performing simple, routine tasks, with no social or adaptation limitations. (R. 608). Accordingly, to the extent the ALJ erred in assigning Dr. Green's opinion little weight, the error is harmless. *Wright*, 153 F. App'x at 684.

In light of the foregoing, the Court finds the ALJ did not commit error with respect to either Dr. Fleischmann's report or Dr. Green's opinion and, to the extent he did, any such error is harmless and not a basis on which to reverse this matter.

**D. The Credibility Determination**

The Claimant's final argument is that the ALJ erred by discounting his testimony concerning the pain caused by his physical impairments because he "fail[ed] to recognize that complaints of pain are notated consistently throughout the record." (Doc. 23 at 15). The record does not support the Claimant's contentions.

A claimant may establish "disability through his own testimony of pain or other subjective symptoms." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). A claimant seeking to

establish disability through his or her own testimony must show:

> (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002).   If the ALJ determines that the claimant has a medically determinable impairment that could reasonably produce the claimant's alleged pain or other symptoms, the ALJ must then evaluate the extent to which the intensity and persistence of those symptoms limit the claimant's ability to work.   20 C.F.R. §§ 404.1529(c)(1), 416929(c)(1). In doing so, the ALJ considers a variety of evidence, including the claimant's history, the medical records and laboratory findings, the claimant's statements, medical source opinions, and other evidence of how the pain affects the claimant's daily activities and ability to work.   *Id*. at §§ 404.1529(c)(1)-(3), 416.929(c)(1)-(3).   "If the ALJ decides not to credit a claimant's testimony as to her pain, he must articulate explicit and adequate reasons for doing so."   *Foote*, 67 F.3d at 1561-62.   The Court will not disturb a clearly articulated credibility finding that is supported by substantial evidence.   *Id*. at 1562.

The ALJ summarized the Claimant's testimony as follows:

The claimant testified that he wears a colostomy bag.   He does not have Medicaid because he lost it; he is not sure why he lost his Medicaid.   He is able to walk but has a limp; he can walk about 200 feet.   He testified that he cannot perform full-time work because he cannot focus, cannot stand for long, cannot balance and cannot bend. He cannot sit for long because of hip pain.   He has a rod in his leg, he has had a hip replacement, he has a colostomy bag and feels that he has been through a lot.   He cannot run anymore.

He testified that he is limited by mood swings and social isolation.   He has difficulty trusting other people.   He has difficulty following instructions and needs reminders to complete household chores.

The claimant's treatment providers have considered reversing the colostomy; however, the claimant cannot afford a procedure because he does not have insurance and cannot afford any additional treatment.

(R. 16-17).[11]   Following this summary, the ALJ found that the Claimant's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."   (R. 17).   The ALJ proceeded to provide specific reasons in support of his credibility determination, stating:

> *In terms of the claimant's alleged limitations in his ability to stand and walk, the record supports the limitations alleged.*   As discussed above, the claimant's left leg and pelvis are impaired status post gunshot wounds.   Orthoscopic treatment notes from 2016 indicate that the claimant had a stiff knee and pain with range of motion in the left hip (Exhibit 8F).   Physical therapy notes indicate that the claimant was non-weight bearing for a time with wasting of strength in the left foot (Exhibit 10F).   Treatment notes from September 2016 indicated that the claimant's ability to bear weight was increasing and, based on his ability to perform part-time work, the record as a whole supports a finding that the claimant can perform[ ] the standing and walking required by sedentary work with the postural and environmental limitations, as described above.

> *In terms of the claimant's limitations related to pain and inability to sustain activities, the record supports some limitations but not to the extent alleged.*   Treatment for pain included narcotic pain medications and a referral for pain management (Exhibit 15F).   The prescription of strong narcotic medication is an indicator that the claimant's physician found his allegations of pain and limitation genuine.   *The undersigned finds that the claimant's symptoms of pain support the restriction to sedentary work and the option to sit or stand, as described above.*

> *In terms of the claimant's mental impairments, the record supports some impairment but not to the extent alleged.*   As discussed above, the claimant's history includes diagnosis and treatment for borderline intellectual functioning and childhood diagnosis of ADHD (Exhibit 16F).   In September 2018, the treatment notes indicate that the claimant reported symptoms of flashbacks, difficulty concentrating, hearing noises and feelings of hopelessness and helplessness (Exhibit 17F).   On examination, the claimant had normal speech, adequate fund of knowledge, intact memory, normal conversation, pleasant mood, logical thought process and limited insight and judgment.   *Although the claimant reports difficulty going out in public, he also demonstrated an ability to perform work activities.   The record as a whole supports the limitations to simple, routine tasks, as described above.*

---

[11] The Claimant does not challenge accuracy of this summary.

(R. 17) (emphasis added).

The ALJ did not, as the Claimant argues, ignore evidence concerning the Claimant's history of pain when considering his testimony.   The ALJ expressly considered such evidence and, while he found the Claimant not as limited as he alleged to be due to his pain, he nevertheless concluded that additional limitations, such as a limitation to sedentary work and the need for a sit-stand option, were warranted due to the Claimant's pain.  (R. 17).   The Claimant does not otherwise challenge how the ALJ accounted for his testimony regarding pain and, therefore, has waived any challenge to that aspect of the ALJ's credibility determination.   *See Crawford*, 363 F.3d at 1161. Accordingly, the Court finds the Claimant's lone argument unpersuasive [12] and, therefore, finds that he has failed to show that the ALJ's credibility determination is not supported by substantial evidence. [13]

---

[12] The Claimant also does not challenge the other reasons the ALJ articulated in support of his credibility determination, therefore any challenge to those reasons has been waived.  *See Crawford*, 363 F.3d at 1161.

[13] The Claimant also raises several conclusory arguments regarding: 1) the ALJ's alleged failure to apply 20 C.F.R. §§ 404.1509 and 416.909 (Doc. 23 at 30 ("The Commissioner committed reversible error [by] . . . fail[ing] to correctly apply 20 C.F.R. § 404.1509 and 416.909."); 2) the weight assigned to his mother's testimony (*Id.* ("[T]he ALJ undervalued Plaintiff's testimony and that of his mother . . ."); 3) the ALJ's step two determination (*Id*. at 36 ("The ALJ, in this case, fails to mention Plaintiff's knee, pelvis or abdominal impairments, in the listing of severe impairments, mentioning only a small portion of the surgeries and lasting impairments, in passing."); and 4) the ALJ's failure to weigh medical records (*Id*. at 37 ("Next, the ALJ needed to follow that up with an analysis of what weight each medical record was to receive.").   The Claimant does not otherwise explain how the ALJ allegedly committed error in each of these instances and provides no legal authority for the proposition that the ALJ must weigh all medical records.  (*See id*.).   Given the perfunctory nature of these arguments, they are deemed to have been waived and the Court will not address them any further.   *See, e.g.*, *Jacobus*, 664 F. App'x at 777 n.2 (stating that the claimant's perfunctory argument was arguably abandoned); *Gombash*, 566 F. App'x at 858 n.1 (stating that the issue was not properly presented on appeal where claimant provided no supporting argument); *McClain of Ga.*, 138 F.3d at 1422 ("Issues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived.").

## V.    Conclusion

Accordingly, it is **ORDERED** that:

1.    The Commissioner's final decision is **AFFIRMED**.

2.    The Clerk is **DIRECTED** to enter judgment in favor of the Commissioner and against

the Claimant, and to close the case.

**DONE** and **ORDERED** in Orlando, Florida on March 23, 2021.

LESLIE R. HOFFMAN
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record

The Court Requests that the Clerk
Mail or Deliver Copies of this order to:

The Honorable John M. Dowling
Administrative Law Judge
Office of Hearings Operations
Bldg. 110, 2nd Floor
4300 Goodfellow Blvd.
Saint Louis, MO 63120-1700